# Illinois Official Reports

## Appellate Court

---

### *People v. Hill*, 2020 IL App (1st) 162119

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS HILL, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-16-2119 |
| Opinion filed<br>Modified upon<br>denial of rehearing | July 13, 2020<br><br>October 19, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-01392(01); the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Editha Rosario-Moore, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Hareena Meghani-Wakely, and Tasha-Marie Kelly, Assistant State's Attorneys, of counsel), for the People. |

Panel                     JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Walker concurred in the judgment and opinion.
Justice Pierce dissented, with opinion.

## OPINION

¶ 1        On trial for aggravated battery to a peace officer, among other charges, Marcus Hill's attorney requested the court instruct the jury on the lesser-included offense, resisting a peace officer. The trial court declined. The jury found Hill guilty of aggravated battery. Hill now argues the trial court erred by failing to give the requested instruction. The State concedes that resisting arrest constitutes a lesser-included offense of aggravated battery as it is charged here but, nonetheless, contends the evidence supports the trial court's decision to deny the instruction. We disagree and hold the trial court should have given the jury the instruction for resisting a peace officer. We reverse and remand for a new trial.

¶ 2                                        Background

¶ 3      A Cook County grand jury returned a multicount indictment against Marcus Hill that alleged, among other things, he committed aggravated battery of a peace officer:

> "Marcus Hill committed the offense of aggravated battery in that he, in committing a battery, other than by the discharge of a firearm, knowingly made physical contact of an insulting or provoking nature to Anthony Lafata, to wit: kicked Anthony Lafata about the body, and Marcus Hill knew the individual battered to be a peace officer, to wit: Chicago police officer, while Anthony Lafata was performing his official duties."

After a trial, the jury found Hill guilty of aggravated battery of Lafata but acquitted Hill of every other count. We focus our discussion on the facts giving rise to the relevant aggravated battery count.

¶ 4      Chicago police officers Taras Bilyj and Lafata received a call about a domestic disturbance. Lafata drove to the area behind 4860 West Patterson Avenue and saw Hill leaving out of the back door of the house at that address. The officers watched as Hill crossed the alley and went through the back door of a different house. They followed him inside.

¶ 5      Immediately inside the door, a staircase led up to the second floor. Both Bilyj and Lafata climbed the stairs to look for Hill. Not seeing anyone, they went back down. Both officers saw movement through a crack in the stairs. They went to the base of the staircase, where a "cubbyhole" door led to a crawlspace under the house. The door, and crawlspace beyond, were only three to four feet high.

¶ 6      Bilyj and Lafata looked into the crawlspace. Bilyj saw Hill under the stairs with his legs pointed toward the officers. Hill ignored both Bilyj's and Lafata's orders to come out from the crawlspace. According to Bilyj: "We were trying to get [Hill] out of there. He is not exiting. He is not coming out, and he just kept kicking his legs, kicking his legs." Hill's legs hit Bilyj's left leg and left hand. Lafata described the encounter similarly, explaining that Hill curled up in the fetal position and "he resisted by kicking at both me and [Bilyj] with his feet, pushing us away." Hill's feet hit Lafata "multiple times in the leg and in the chest area." The officers eventually got Hill to cooperate by deploying a taser two times.

¶ 7    Chicago police Sergeant Philip Banaszkiewicz watched the interaction after arriving to back up Bilyj and Lafata. From his vantage point, he could only see Hill from the thighs down. Banaszkiewicz confirmed that Hill refused to comply with the officers' orders. He also saw Hill's legs "kicking up and down" for 10 to 20 seconds. Hill would stop kicking and then start again when the officers approached him. Banaszkiewicz saw Hill's legs hit Bilyj and Lafata a couple of times.

¶ 8    Hill testified in his own defense. He denied intentionally hitting either Bilyj or Lafata with his feet. He admitted hiding under the porch but testified that he came out voluntarily after the officers ordered him out and one of the officers "just tased [him]." Hill explained that the taser prong did not go all the way in and so he "faked like [he] was shaking" and the officers tased him a second time.

¶ 9    After both parties rested, Hill's counsel asked the court to give the jury the following instruction on the offense of resisting a peace officer:

> "A person commits the offense of resisting or obstructing a [peace officer] when he knowingly resists or obstructs the performance of any authorized act within the official capacity of one known to him to be a [peace officer]." Illinois Pattern Jury Instructions, Criminal, No. 22.13 (approved May 4, 2018) (hereinafter IPI Criminal No. 22.13).

Hill's counsel contended that the offense of resisting a peace officer constitutes a lesser-included offense of aggravated battery to a peace officer. The trial court disagreed, finding: "I don't believe it's a lesser included offense or applicable in this case factually and, accordingly, that request will be denied."

¶ 10    The jury found Hill guilty of aggravated battery of Lafata but found him not guilty of aggravated battery of Bilyj. The jury also found Hill not guilty of all the remaining counts with which he had been charged.

¶ 11    Hill's counsel reasserted the issue of jury instructions in her motion for a new trial, arguing that the trial court erred in denying the resisting instruction. The State responded that, based on the indictment, as a matter of law, resisting a peace officer was not a lesser-included offense of aggravated battery to a peace officer. Alternatively, the State argued the evidence did not support an instruction on the lesser offense because Hill testified that he did not touch the officers. The trial court denied Hill's motion, simply saying, "I will stand on all of my rulings."

¶ 12    The trial court sentenced Hill to 14 years in the Department of Corrections (DOC).

¶ 13                                                    Analysis

¶ 14    Hill primarily argues the trial court erred when it declined to instruct the jury on the lesser-included offense of resisting a peace officer. He argues both that the aggravated battery charge in the indictment included the broad outline of the lesser-included offense and that the facts supported instructing on the lesser-included offense. The State concedes that resisting a peace officer constitutes a lesser-included offense of aggravated battery as charged. The State argues, however, that the evidence did not support giving the instruction because no rational jury could have convicted Hill of the lesser-included offense while simultaneously acquitting him of the greater offense. Alternatively, the State argues any error harmless. We find error and reverse.

¶ 15    Ordinarily, a defendant has a fundamental right to be convicted only of the offenses with which he or she is charged. *People v. Clark*, 2016 IL 118845, ¶ 30. A limited exception exists for "lesser-included" offenses. *Id.* Under the charging instrument approach, which Illinois

employs, a lesser-included offense encompasses the "broad foundation" or "main outline" found in the "facts alleged in the charging instrument." *Id.* ¶ 31. Once a court determines that an offense is a lesser-included offense of the one charged, the question becomes whether "the evidence adduced at trial *** rationally support[s] a conviction on the lesser-included offense and an acquittal on the greater offense." *Id.* ¶ 39.

¶ 16 Both parties assert that the abuse of discretion standard applies to our review of the trial court's decision to decline the lesser-included offense instruction. We agree that is the standard we will ultimately apply, given the State's concession on the first prong of the analysis. We find it useful, however, to put it slightly more precisely.

¶ 17 In the context of jury instructions for lesser-included offenses, decisions from our supreme court indicate a bifurcated standard of review. As to the first prong of the analysis— determining whether an offense is a lesser-included of the greater offense—our supreme court has repeatedly said this involves a purely legal question and our review is *de novo*. *Id.* ¶ 32 ("Whether an offense is a lesser-included offense of a charged offense is an issue of law that we review *de novo*." (citing *People v. Kennebrew*, 2013 IL 113998, ¶ 18)). Then, as to the second prong of the analysis—determining whether the evidence at trial supports giving the lesser-included instruction—our supreme court has said, as the parties acknowledge, that our review requires the demonstration of an abuse of the trial court's discretion. *People v. McDonald*, 2016 IL 118882, ¶ 42.

¶ 18 Hill argues that resisting arrest is a lesser-included offense of aggravated battery. The State agrees. But this court is not bound by party concessions (*People v. Carter*, 2015 IL 117709, ¶ 22), and because our review of this prong of the test is *de novo*, we will briefly explain our agreement with the parties.

¶ 19 As indicated, Illinois uses the "charging instrument" approach to determine whether a lesser uncharged offense falls within a charged offense. *People v. Novak*, 163 Ill. 2d 93, 112-14 (1994), *abrogated on other grounds by People v. Kolton*, 219 Ill. 2d 353, 364 (2006). Under that approach, we must determine whether the allegation in the charging instrument (here, an indictment) describes the greater offense in a way that contains a "broad foundation" or "main outline" of the purportedly lesser-included offense. *Kolton*, 219 Ill. 2d at 361. The indictment need not lay out every element of the lesser offense; it suffices that the elements of the lesser offense can be "reasonably inferred" from the description of the charged offense. *Id.* at 364.

¶ 20 The State charged Hill with aggravated battery:

> "Marcus Hill committed the offense of aggravated battery in that he, in committing a battery, other than by the discharge of a firearm, knowingly made physical contact of an insulting or provoking nature to Anthony Lafata, to wit: kicked Anthony Lafata about the body, and Marcus Hill knew the individual battered to be a peace officer, to wit: Chicago police officer, while Anthony Lafata was performing his official duties."

Hill's counsel asked that the jury be instructed using language from the Illinois Pattern Jury Instructions:

> "A person commits the offense of resisting or obstructing a [peace officer] when he knowingly resists or obstructs the performance of any authorized act within the official capacity of one known to him to be a [peace officer]." IPI Criminal No. 22.13.

We have held, in similar circumstances, that resisting a peace officer constitutes a lesser-included offense of aggravated battery to a peace officer. *People v. Sanchez*, 2014 IL App (1st)

120514, ¶¶ 22-24; *People v. Pedersen*, 195 Ill. App. 3d 121, 129-30 (1990). The court in *Pedersen* found that implicit in the charge that the defendant battered an officer by knowingly kneeing and biting him is the idea that the same officer would be obstructed in the performance of his official duties. *Pedersen*, 195 Ill. App. 3d at 129-30. As with kneeing and biting, so too with kicking. We see no scenario in which Hill kicking Lafata would not obstruct Lafata's ability to place Hill under arrest. As the parties agree, the charge of aggravated battery of officer Lafata contains the broad outline of resisting a peace officer, a lesser-included offense.

¶ 21    We turn now to the second step of the analysis. We conclude that at least some evidence in the record supports a possible conviction for resisting and acquittal for aggravated battery. Our conclusion turns largely on the meaning of "knowingly" in both the aggravated battery statute and resisting a peace officer statute. See 720 ILCS 5/12-3.05(d)(4)(i) (West 2014) (referring to battery offense (720 ILCS 5/12-3(a)(2) (West 2014) (aggravated battery committed when defendant "knowingly *** makes physical contact of an insulting or provoking nature"))); 720 ILCS 5/31-1(a) (West 2014) (resisting peace officer committed when defendant "knowingly resists or obstructs" performance of officer's authorized acts). To support a conviction for an offense with the *mens rea* of knowledge, it is not enough that the defendant knowingly commits the alleged action (here, kicking). The defendant must, instead, commit the action with knowledge that the particular result will follow (here, either insulting or provoking contact, or resisting). See *People v. Willett*, 2015 IL App (4th) 130702, ¶¶ 53-54.

¶ 22    Putting the theory into practice, we must answer this question: Is there *some* evidence to support a rational finding that Hill kicked at Lafata with knowledge that he would obstruct Lafata's attempt to arrest him but without knowledge that he would make contact of an insulting or provoking nature with Lafata? We answer in the affirmative.

¶ 23    According to Lafata's testimony, Hill did not start kicking until the officers had already begun their attempt to arrest him. Hill moved his legs in a motion "kind of like a bicycle" and hit Lafata multiple times in the chest and leg. Banaszkiewicz testified that the entire interaction lasted "10, 15, 20 seconds" and that Hill would periodically stop kicking. Thus, Hill made kicking motions for less than 20 seconds. We also must account for the other circumstances in the crawlspace. Hill laid on his side in a fetal position. The officers had to stoop down to get into the crawlspace, which had a three- to four-foot high ceiling. Due to darkness, the officers used their flashlights to see.

¶ 24    We find these circumstances permit a rational jury to enter a verdict on the lesser-included offense of obstructing a peace officer. Evidence indicates that Hill knew his kicking was preventing his arrest—Banaszkiewicz testified that Hill would only kick when the officers got near him. Evidence also indicates that Hill knew he was obstructing an authorized action because he kicked in response to the officer's requests that he come out of the crawlspace.

¶ 25    We also find these circumstances could lead a rational jury to conclude that insufficient evidence existed to support a conviction for aggravated battery, specifically that Hill knew his kicking would make contact of an insulting or provoking nature. We emphasize that "knowledge," for the purpose of criminal liability, requires a person to be "consciously aware that his [or her] conduct is practically certain to cause the result." (Internal quotation marks omitted.) *Id.* ¶ 51. Hill made kicking motions for, at most and not continually, 20 seconds. He kicked while in a physical position that deprived him of a full range of motion. He kicked in the direction of officers in the dark with flashlights shining at him, depriving him of the ability to see where his kicks would land. A reasonable jury could conclude that Hill did not act with

the awareness that his kicks were "practically certain" to make contact at all, let alone make contact of an insulting or provoking nature.

¶ 26    Hill's testimony provides a less culpable version of events. According to Hill, he did not start flailing until after the officers' first taser attempt. Then, he started "fak[ing] like [he] was shaking." Hill expressly denied intentionally kicking or hitting the officers. If the jury believed Hill's testimony, they could conclude that his act of faking electrocution established resisting rather than aggravated battery. More importantly, a reasonable jury could conclude (if it credited Hill's testimony) that, at most, Hill kicked *at* Lafata as opposed to successfully making contact. That action would constitute resisting arrest but not aggravated battery.

¶ 27    The State's brief refers to the "multitude of credible and consistent evidence" from the officers, leading it to conclude the jury could not rationally acquit him of aggravated battery. But "[r]equiring that credible evidence exist in the record risks the trial court invading the function of the jury and substituting its own credibility determination for that of the jury." *McDonald*, 2016 IL 118882, ¶ 25. In the context of lesser-included offense instructions, "some evidence" does not mean "some credible evidence." (Emphasis omitted.) *Id.* Here, there is at least some evidence that, if believed, could lead to an acquittal of the greater offense and conviction of the lesser.

¶ 28    The State filed a timely petition for rehearing, adopting assertions made in the dissent, and arguing that our decision "wholly ignores the significance of the jury's verdict" because we have "speculated" about what the jury *could* find instead of respecting what they *did* find. This argument suffers from several analytical flaws. Essentially, the State asks us to toss aside the test for determining whether the trial court should have given an instruction on the lesser offense in light of the trial evidence: whether "[t]he evidence presented in the instant case *could* lead a jury to rationally conclude" that a defendant was guilty of the lesser offense and, at the same time "*could* have rationally concluded" that the defendant was not guilty of the greater offense. (Emphases added.) *People v. Hamilton*, 179 Ill. 2d 319, 328 (1997). This exercise is inherently hypothetical, not based on the actual verdict.

¶ 29    Next, the State's argument, taken to its logical conclusion, would mean that a defendant could never show error in the court's failing to give a lesser-included offense instruction if the jury found him guilty of the greater offense. One example suffices. Our supreme court in *Hamilton* found error in the failure to give an instruction for the lesser-included offense of theft even though the jury had already found the defendant guilty of residential burglary. *Id.* at 322, 328. If the jury's finding of guilt for residential burglary had been dispositive in *Hamilton*, then the defendant's argument about a lesser-included instruction for theft would have been rejected as inconsistent with the verdict. In other words, a claim that the court should have given a lesser-included offense instruction will by its own nature be inconsistent with the original verdict.

¶ 30    The jury's finding of guilt does not foreclose our analysis because the purpose of lesser-included offense instructions "is to provide 'an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, *might otherwise convict rather than acquit the defendant of the greater offense.*' " (Emphasis added.) *Id.* at 323 (quoting *People v. Bryant*, 113 Ill. 2d 497, 502 (1986)). As our supreme court has consistently cautioned, there is a risk the jury convicted Hill of the greater offense of aggravated battery because they did not have any other option presented to them.

¶ 31    Situated in the proper legal framework, the State's arguments about weighing the facts also fail. The State argues that Hill's actions "satisfied the 'knowing' mental state" required for the offense. The State, again echoing the dissent, says it "defies all logic" to suggest that Hill's kicking was done with knowledge that he would make contact of an insulting and provoking nature with the officers. Based on our review of the record, we simply disagree. Maybe a jury on remand will ultimately agree with the State's characterization of the evidence, but as we stated in our original opinion (*supra* ¶ 27), at this stage, we do not determine whether some *credible* evidence exists to support a lesser-included offense instruction. *McDonald*, 2016 IL 118882, ¶ 25. That task is reserved for the jury—a properly instructed jury.

¶ 32    Finally, we reject the State's heavy reliance on *People v. Wrencher*, 2015 IL App (4th) 130522. In *Wrencher*, the defendant was charged with aggravated battery to a peace officer. The Fourth District affirmed the trial court's denial of a lesser-included offense instruction for resisting a peace officer. We decline to follow *Wrencher* as factually distinguishable and, also, because its analysis misapprehends the "knowing" mental state.

¶ 33    Whatever we think of the court's analysis in *Wrencher*, the defendant's conduct during his arrest differed in significant respects from Hill's. Much like here, the officers in *Wrencher* responded to a call of a domestic disturbance. *Id.* ¶ 9. Similarities end there. When the officers arrived, multiple people started getting out of a car. *Id.* The defendant ignored the officers' order to get back into the car and continued to ignore subsequent orders to get the defendant to comply. *Id.* ¶¶ 9-10. One of the officers grabbed the defendant and brought him to the squad car. *Id.* ¶¶ 10-12. At that point, the officer testified that the defendant "looked me directly in the eye, kind of—he tensed up, I could see his jaw clench, his shoulders kind of tensed up, next thing I know[,] he started squeezing my hand and gripping into it and digging his nails into my fingers." (Internal quotation marks omitted.) *Id.* ¶ 12. The defendant had so strong of a grip that the officer could not pull his hand away. *Id.*

¶ 34    The Fourth District found that it would have been impossible to acquit the defendant of aggravated battery—a necessary component of the lesser-included offense analysis—because the act of digging his fingernails into the officer's hand comprised the knowing act of causing bodily harm. *Id.* ¶ 35. We also note circumstantial evidence in *Wrencher* indicating that the defendant actively tried to do harm—before digging his fingers into the officer's hand, he looked the officer directly in the eye and clenched his jaw. *Id.* ¶ 12. A jury could rationally conclude that the defendant in *Wrencher* not only knew, but also intended, his actions to cause harm to the officer.

¶ 35    As we have already set out, drastically less conclusive proof of Hill's mental state presents here. A rational jury could conclude that Hill was not in a physical position to kick with the force necessary to knowingly make contact of an insulting or provoking nature, a rational jury could conclude that the lighting conditions (darkness plus flashlights) suggest Hill could not have known whether his kicks would land *at all*, or a rational jury could conclude, based on Hill's periodic pauses in kicking, that he knew his kicking motion to be preventing his arrest but not making contact of an insulting or provoking nature. We find that, unlike *Wrencher,* a rational jury could have acquitted Hill of the greater offense had they been properly instructed about the lesser-included offense.

¶ 36    Even if the facts of *Wrencher* corresponded more, we would have serious doubts about the soundness of its analysis. The court framed the question in this way: "Would it have been rationally defensible to find that by knowingly digging his fingernails into Manzana's hand,

defendant committed the offense of resisting a peace officer but *not* the offense of aggravated battery?" (Emphasis in original.) *Id.* ¶ 35. But, as we already said, citing a recent Fourth District case, when we consider a defendant's knowing mental state, the question is not whether the defendant " 'knowingly [dug] his fingernails' " (*id.*) into the officer's hand; rather we ask whether he dug his fingernails into the officers hand knowing that a particular result would follow (either resisting or a battery or both). See *Willett*, 2015 IL App (4th) 130702, ¶¶ 53-54.

¶ 37    We can see how the decision in *Wrencher* comes out the same under either conception of a "knowing" mental state—ample circumstantial evidence permits inferring that the defendant in *Wrencher* knew his actions would cause bodily harm, not just obstruct his arrest. That distinction matters here. If knowledge means no more than Hill's consciousness of his own body's actions, then it would be hard to dispute the inevitability of a conviction of the greater offense of aggravated battery—Hill knowingly kicked at Lafata, and Lafata testified that he was harmed. But it is not enough that Hill knowingly made kicking motions; he must have made those kicking motions with the knowledge that contact with Lafata, of an insulting or provoking nature, was the "practically certain" result. *Id.* A rational jury could conclude that the evidence does not support this determination.

¶ 38    Our disagreement with the dissent is the same as our disagreement with the court in *Wrencher*. The dissent repeatedly describes the relevant act as "knowingly kicking." *Infra* ¶¶ 44, 48, 50, 56. But, as we are dealing with the same "version of the offense" (see *infra* ¶ 42), the actual relevant act, as charged in the indictment, is that Hill knowingly "*made physical contact* of an insulting or provoking nature." (Emphasis added.) Kicking is nothing more than the alleged modality of making physical contact. As we have already explained at length, a rational jury could conclude that Hill knowingly kicked (in that he consciously chose to move his legs) but did not knowingly make contact of an insulting or provoking nature.

¶ 39    The State briefly argues harmless error because the evidence supporting the verdict was "so clear and convincing" that proper instructions would not have changed the outcome. We disagree.

¶ 40    Hill's contemporaneous objection and inclusion of the error in his motion for a new trial fully preserved it. As a result, the State has the burden to show that the error is harmless beyond a reasonable doubt. *E.g.*, *People v. Donahue*, 2014 IL App (1st) 120163, ¶ 109 (setting out standard). As the State properly asks, would the result of the trial have differed had the jury been properly instructed—if so, the error is not harmless. See *People v. Pomykala*, 203 Ill. 2d 198, 210 (2003).

¶ 41    The State argues Lafata offered credible evidence that Hill kicked him; that may be true, but for reasons we have already discussed, that would not necessarily require a conviction for aggravated battery. Several clues establish that the jury was unconvinced to make conviction for aggravated battery a foregone conclusion. The jury sent out notes during deliberations asking for transcripts of Hill's, Lafata's, and Bilyj's testimony. Then, the jury acquitted Hill of aggravated battery of Bilyj despite Bilyj's ostensibly credible testimony that Hill kicked him as well. Taking the close trial evidence together with the jury's questions and acquittal of Bilyj, we cannot say, beyond a reasonable doubt, that the jury would not have acquitted Hill of aggravated battery of Lafata and instead convicted him of resisting had they been given the proper instructions.

¶ 42 We find that, as a matter of law, resisting a peace officer to be a lesser-included offense of aggravated battery as charged. Considering the facts, we find the trial court abused its discretion in determining that a rational jury could not have convicted of the lesser offense and acquitted of the greater offense. The error was not harmless beyond a reasonable doubt. We reverse Hill's conviction and remand for a new trial.

¶ 43 Given our disposition, we need not address Hill's other arguments about the trial court's *voir dire* admonishments and his sentence.

¶ 44                                  Motion for Release on Appeal Bond

¶ 45 While the State's petition for rehearing was pending, Hill filed a motion for release on appeal bond. The State has not filed a timely response. We unanimously denied Hill's motion in a separate order, and we now explain our reasons for doing so.

¶ 46 Hill invokes Illinois Supreme Court Rule 604, which says: "A defendant shall not be held in jail or to bail during the pendency of an appeal by the State, or of a petition or appeal by the State under Rule 315(a), unless there are compelling reasons for his or her continued detention or being held to bail." Ill. S. Ct. R. 604(a)(3) (eff. July 1, 2017). Rule 315(a), in turn, governs appeals from this court to our supreme court. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019). Hill argues, taking the rules together, that he cannot be held in custody pending the disposition of the State's petition for rehearing or possible appeal to the Illinois Supreme Court.

¶ 47 The cases Hill cites appear to support his contention. As the Second District succinctly put it, "[t]he rule favors release." *People v. Baltimore*, 381 Ill. App. 3d 115, 125 (2008) (referring to Rule 604(a)(3)). The Fifth District has used similarly absolute language saying Rule 604(a) "mandates the release of the defendant during the pendency of an interlocutory appeal." *People v. Wells*, 279 Ill. App. 3d 564, 566 (1996).

¶ 48 The procedural posture of both cases Hill cites were different than what we confront here. *Baltimore* involved an attempted State appeal from an order barring the use of certain video evidence. *Baltimore*, 381 Ill. App. 3d at 123. The court found it lacked jurisdiction over the State's attempted appeal, which rendered the defendant's Rule 604(a)(3) argument moot. *Id.* at 126. In *Wells*, the court reviewed a trial court's order continuing the defendant's detention under Rule 604(a)(3) while the State pursued a second interlocutory appeal. *Wells*, 279 Ill. App. 3d at 565-66. The court emphasized that the defendant had not yet been found guilty and was still "clothed with the presumption of innocence." *Id.* at 567. The nature of our disposition, granting Hill a new trial after a jury found him guilty, sets this case procedurally apart from *Baltimore* and *Wells*.

¶ 49 We must determine, then, whether those procedural differences matter. To do this we interpret the text of Rule 604(a). We apply principles of statutory construction to Illinois Supreme Court rules. *E.g.*, *People v. Tousignant*, 2014 IL 115329, ¶ 8. We construe the rules to give effect to the intent of the drafters. *Id.* The ordinary meaning of the text provides the most reliable indicator of that intent. *Id.* We should not construe words or phrases in isolation; but rather, interpret them in light of other provisions and the rule as a whole. See *id.* We also may consider the ill the rule sought to remedy and the consequences of interpreting the rule one way or the other. *Id.*

¶ 50 Rule 604(a) reads:
      "(a) Appeals by the State

(1) *When State May Appeal*. In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114-1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence.

(2) *Leave to Appeal by State.* The State may petition for leave to appeal under Rule 315(a).

(3) *Release of Defendant Pending Appeal.* A defendant shall not be held in jail or to bail during the pendency of an appeal by the State, or a petition or appeal by the State under Rule 315(a), unless there are compelling reasons for his or her continued detention or being held to bail.

(4) *Time Appel Pending Not Counted.* The time during which an appeal by the State is pending is not counted for the purpose of determining whether an accused is entitled to discharge under section 103-5 of the Code of Criminal Procedure." Ill. S. Ct. R. 604(a) (eff. July 1, 2017).

Based on the language of Rule 604(a)(3) alone, we see two possible interpretations. The language "shall not be held in jail or to bail during the pendency *** of a petition or appeal by the State under Rule 315(a)" (Ill. S. Ct. R. 604(a)(3) (eff. July 1, 2017)) could be interpreted to apply any time the State appeals any judgment of this court, or that same language could be interpreted to apply only when the State continues an appeal to the Illinois Supreme Court that originally initiated in this court under Rule 604(a)(1). We will set out the textual evidence for both interpretations.

¶ 51    The language in Rule 604(a)(3) supports the broad interpretation because there are no express limitations on the term "petition or appeal by the State under Rule 315(a)." *Id.* Ordinarily we are not to read limitations or exceptions into a statute or rule where the drafters have not seen fit to include any. See, *e.g.*, *People v. McChriston*, 2014 IL 115310, ¶ 22. Construing the language in Rule 604(a)(3) in isolation supports the strong statements about its applicability in *Baltimore* and *Wells* on which Hill relies.

¶ 52    But as we said, we should not construe the provisions of a rule or statute in isolation. *Tousignant*, 2014 IL 115329, ¶ 8. Textual clues reside throughout the rest of Rule 604(a) suggesting an interpretation more limited than Hill's. First, the title of the rule "appeals by the State" is defined in Rule 604(a)(1). That section lists a limited set of circumstances under which the State may appeal decisions from the trial court. Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017). Here, we are not dealing with an appeal by the State as contemplated in Rule 604(a)(1).

¶ 53    Second, the language in Rule 604(a)(2) and Rule 604(a)(3) duplicates the language in Rule 315(a), which already allows for appeals "filed by any party, including the State" to the Illinois Supreme Court from judgments of this court. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019). So the language in Rule 604(a) must be doing different work than the language in Rule 315(a). See *McChriston*, 2014 IL 115310, ¶ 22 (we must not read statute "so as to render any part *** superfluous"). Most naturally read in a way that gives independent effect to Rule 604(a) and Rule 315(a), Rule 604(a) expressly grants permission for the State to continue an appeal in the Illinois Supreme Court that it initiated in this court under Rule 604(a)(1).

¶ 54 Finally, Rule 604(a)(4) cautions that the time a State's appeal is pending does not count for the purposes of "section 103-5 of the Code of Criminal Procedure." Ill. S. Ct. R. 604(a)(4) (eff. July 1, 2017). Section 103-5 guarantees speedy trial within 120 days of the date the defendant was taken into custody. 725 ILCS 5/103-5(a) (West 2018). In other words, section 103-5 codifies a *pre*trial right that has no bearing here where the mandate has not yet issued in Hill's direct appeal. The inclusion of Rule 604(a)(4) follows from Rule 604(a)(1), which allows the State to appeal from trial court orders that terminate the proceedings before trial.

¶ 55 Reading all the provisions of Rule 604(a) together, we find they most naturally read to govern State appeals in this court and the Illinois Supreme Court that were initiated under Rule 604(a)(1). This reading furthers the purpose of Rule 604(a)(3), as discussed in *Wells*—to primarily protect presumptively innocent defendants from lengthy periods of pretrial custody. *Wells* was emphatic in its description of the defendant as "clothed with the presumption of innocence," that the State's "power to accuse is not the power to punish," and that "mere accusation can sustain detention for only a brief period of time." *Wells*, 279 Ill. App. 3d at 567. Rule 604(a)(3) deprives the State of its ability to achieve lengthy periods of custody *before* conviction by seeking an appeal of an adverse order in the trial court.

¶ 56 To be sure, we have found Hill entitled to a new trial; but the mandate of this court (or of the Illinois Supreme Court should the State seek further appeal) has not issued, meaning that our judgment is not final. See *People v. McCloskey*, 2 Ill. App. 3d 892, 899 (1971) ("from the viewpoint of the court rendering its decision the judgment becomes a final adjudication when that court loses jurisdiction to alter such judgment and, from the viewpoint of the parties involved, the judgment becomes a final adjudication when their rights of appeal have been exhausted"). We conclude, therefore, that Hill does not stand "clothed in the presumption of innocence" like the defendant in *Wells* until all avenues for the State to appeal have been exhausted and the mandate of this court issues to the circuit court ordering a new trial.

¶ 57 What does all this mean? Because Hill is not in a pretrial posture and has a valid judgment against him, the forceful language of Rule 604(a)(3) and the cases interpreting it do not apply to him. Instead, because Hill remains under sentence until the mandate issues, we find our inquiry governed by Illinois Supreme Court Rule 609 (eff. Feb. 6, 2013), which provides in relevant part: "If an appeal is taken from a judgment following which the defendant is sentenced to imprisonment *** the defendant may be admitted to bail and the sentence or condition of imprisonment or periodic imprisonment stayed, with or without bond, by a judge of the *** reviewing court." The motion must be made by the defendant "showing good cause." Ill. S. Ct. R. 609(b) (eff. Feb. 6, 2013).

¶ 58 There is a paucity of case law explaining how we apply Rule 609(a) in this context. The most recent case we can find addressing bond under Rule 609, denied the defendant's motion because the court affirmed the judgment. See *People v. Turner*, 2018 IL App (1st) 170204, ¶ 90. The text of the rule, though, gives sufficient guidance. First, "the defendant may be admitted to bail" indicates our decision to grant bond pending appeal is discretionary. Ill. S. Ct. R. 609(a) (eff. Feb. 6, 2013). Second, "[u]pon motion showing good cause" (Ill. S. Ct. R. 609(b) (eff. Feb. 6, 2013)) places the burden on Hill to show good cause for his release either on bond or his own recognizance, unlike Rule 604(a)(3), which places the burden on the State to show compelling reasons for the defendant's continued detention.

¶ 59 Hill argues that he should be released because, applying day-for-day credit, he has already served a majority of his sentence. But Hill's reliance on his anticipated good time credit is

- 11 -

misplaced reliance on credit DOC may not give. *People v. Peacock*, 2019 IL App (1st) 170308, ¶ 19 (" 'Good time, although part of every sentence, is a conditional right which may be forfeited \*\*\*.' " (quoting *People ex rel. Colletti v. Pate*, 31 Ill. 2d 354, 357 (1964))). At all times and at any time, DOC could revoke Hill's good time credit and he could serve the entire 14-year term of his sentence.

¶ 60     Additionally, Hill argues that his possible acquittal on the greater offense of aggravated battery of a peace officer and conviction on the lesser offense of resisting a peace office would lead to Class A misdemeanor sentence of, at most, one year. See 720 ILCS 5/31-1(a) (West 2014); 730 ILCS 5/5-4.5-55(a) (West 2014). He correctly notes he already has served that much of a sentence, with or without good time credit. The question, however, is not whether Hill should be admitted to bond pending his retrial. The question is whether he should be admitted to bond pending any further appeal of his current conviction. As we already discussed, until the issuance of our mandate, our judgment reversing and remanding for a new trial is not final. We find consideration of a hypothetical sentence on the lesser-included offense to be inappropriate under the circumstances.

¶ 61     Hill points to the following factors, external to his offense, that warrant release on bond: (i) he has taken steps at self-improvement while incarcerating, including classes in education, mental health, parenting, and good behavior; (ii) he has an 18-year-old daughter in Arkansas, with whom he regularly speaks; (iii) he would reside with his sister at her Chicago residence if released; (iv) one of his contacts would provide him with a job working in the meat department at a supermarket; (v) appellate counsel has advised him that he would have to surrender to DOC and finish the days of the originally imposed sentence if our decision is reversed by the Illinois Supreme Court and his conviction and sentence are reinstated. But, Hill does not mention, let alone attempt to explain, his criminal history. According the Presentence Investigation Report, Hill has 24 convictions from 1997 to 2013. They show a concerning pattern of rapid reoffending each time he is released from custody.

¶ 62     We appreciate the efforts Hill has made at self-improvement while incarcerated, and we commend appellate counsel for taking considerable steps to work with Hill to plan for his eventual release. But we find Hill's lengthy criminal history, which specifically shows a tendency to reoffend quickly after release from custody, outweighs those efforts. We do not find good cause to release Hill on bond pending further appeal by the State.

¶ 63     Reversed and remanded.

¶ 64     JUSTICE PIERCE, dissenting:

¶ 65     The majority is entitled to its opinion, but it is not entitled to invent its own version of the offense with which defendant was charged. The majority acknowledges that count XXXVIII charged defendant with aggravated battery to a peace officer " 'in that he, in committing a battery, other than by the discharge of a firearm, knowingly made physical contact of an insulting or provoking nature to Anthony Lafata, to wit: kicked Anthony Lafata about the body' " knowing he was a peace officer performing his official duties. *Supra* ¶ 20. This offense is a simple battery elevated to the felony offense of aggravated battery based on the *status of the victim*, not based on the nature or severity of any harm to the victim. See 720 ILCS 5/12-3.05(d)(4) (West 2014).

¶ 66    Hill does not challenge the sufficiency of the evidence on the aggravated battery to a peace officer charge. It is important to keep in mind that defendant was not charged with resisting a peace officer, a Class A misdemeanor (720 ILCS 5/31-1(a) (West 2014)). If he had, the evidence at trial would support a finding of guilt on both the charge of resisting a peace officer and count XXXVIII, aggravated battery to a peace officer. The jury would also have had the option of finding defendant not guilty of both charges. But the jury would not rationally find defendant guilty of resisting a peace officer and not guilty of count XXXVIII because the evidence shows that the same acts and the same mental state are the basis for proving the two offenses. See *People v. Hamilton*, 179 Ill. 2d 319 (1997).

¶ 67    However, defendant does not get to pick the offense he wants the jury to consider. As discussed later, in this case, because defendant was not charged with resisting a peace officer, defendant would only be entitled to have the jury consider the offense of resisting a peace officer where the trial court, in its discretion, found the evidence would allow a rational jury to find the defendant guilty of resisting and not guilty on count XXXVIII. The trial court was correct in refusing the lesser offense instruction because the same acts, knowingly kicking, and the same mental state, knowing that the person is a peace officer, are the basis for each offense, a jury could not rationally find Hill guilty of knowingly resisting a peace officer by kicking and not guilty of knowingly kicking a person known to be a peace officer. As a reviewing court, in deciding whether the jury should have been instructed on a lesser offense, our review is limited to what the indictment charged and the evidence at trial. *Hamilton*, 179 Ill. 2d at 324. As such, deciding this issue only concerns the charge of knowingly making insulting or provoking contact with the knowledge that the victim was a peace officer and the evidence at trial.

¶ 68    The resolution of this issue is relatively straight forward. In *Hopper v. Evans*, 456 U.S. 605, 611-12 (1982), the United States Supreme Court made clear that an included-offense instruction is required only in cases where the jury could rationally find the defendant guilty of the lesser offense and not guilty of the greater offense. While in general, a defendant may not be convicted of an offense for which he has not been charged, in certain circumstances, a defendant is entitled to have the jury instructed on a lesser-included offense. *Hamilton*, 179 Ill. 2d at 323. The purpose of giving an instruction on a lesser-included offense is to provide " 'an important third option to a jury that, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense.' " *Id.* at 323-24 (quoting *People v. Bryant*, 113 Ill. 2d 497, 502 (1986)). A lesser-included offense is one that is "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9(a) (West 2014). Here, we are dealing with the same facts—kicking a peace officer—and the same mental state— knowingly—in deciding whether the trial judge abused his discretion by refusing to instruct the jury on the uncharged offense of resisting a peace officer.

¶ 69    Our supreme court has held that to determine whether a particular offense is included in a charged offense, the proper approach is to examine both the charging instrument and the evidence adduced at trial. *Hamilton*, 179 Ill. 2d at 324. Under this approach, an offense is considered a lesser-included offense if it is described by the charging instrument. *Id.* The court found that the charging instrument alleged the offense of burglary along with the "intent to commit a theft therein" and satisfied the first prong of the charging instrument analysis. *Id.* at

- 13 -

324-25. However, even if an offense is a lesser-included offense, it does not automatically follow that the jury must be instructed on that offense. *Id.* at 324. Rather, a defendant is entitled to an instruction on a lesser-included offense only if an examination of the evidence presented at trial reveals that it would permit a jury to rationally find the defendant guilty of the lesser offense, yet acquit him of the greater offense. *Id.* A trial court's decision regarding whether to allow a jury instruction is reviewed for an abuse of discretion. *People v. Mohr*, 228 Ill. 2d 53, 65-66 (2008).

¶ 70    Using the "charging instrument approach" the majority first concludes, and the parties agree, that the charge of aggravated battery of Lafata contains the broad outline of resisting a peace officer. I take no issue with this first finding.

¶ 71    Next, the question is whether the evidence at trial would have permitted the jury to rationally find defendant guilty of the lesser offense yet acquit him of the greater offense. *Hamilton*, 179 Ill. 2d at 324. Stated another way, if this jury had been instructed on both resisting a peace officer and insulting or provoking contact with a peace officer, was there any evidence that would have supported a conviction for resisting a peace officer and an acquittal for aggravated battery of a peace officer as alleged in count XXXVIII. *People v. Wrencher*, 2015 IL App (4th) 130522, ¶ 34. The conduct alleged in count XXXVIII was that Hill knowingly made insulting or provoking contact with Lafata by kicking him. Therefore, under the facts of this case, a more precise framing of the question is whether the jury could rationally find that by knowingly kicking Lafata the defendant committed the lesser offense of resisting a peace officer but that same act of kicking, committed with the same mental state, was not sufficient to prove the charged offense of insulting or provoking battery of a peace officer beyond a reasonable doubt. *Id.* ¶ 35.

¶ 72    As a court of review, we are required to look at the record and determine whether the trial court correctly exercised its discretion by refusing to instruct the jury on the lesser offense. We do not, in hindsight, determine whether the evidence would support the lesser offense instruction in a vacuum. While the evidence here could arguably sustain a conviction for resisting a peace officer had the State charged defendant with that offense, the evidence, without question, independently supports a conviction for the charged offense of aggravated battery to Lafata. The jury made this determination that the elements of count XXXVIII were proven beyond a reasonable doubt. Defendant does not make any argument about the sufficiency of the evidence. Clearly, based on the officers' testimony, the evidence supports a finding that Hill knowingly kicked Lafata with knowledge that he was a police officer performing his duties. Punching, kicking, slapping, or spitting on another person are actions that may easily be construed as insulting or provoking contact. See *People v. Nichols*, 2012 IL App (4th) 110519, ¶ 43. As the jury found, Hill's kicking of Officer Lafata was insulting or provoking contact sufficient to prove count XXXVIII. As such, a rational jury would not convict on the lesser resisting a peace officer offense and acquit on the greater charged offense.

¶ 73    Also, based on the officers' testimony, the evidence clearly supports a finding that defendant's kicking of the officer was sufficient to prove the uncharged offense of resisting a peace officer. And, based on defendant's testimony, the jury could believe his version, disregard the officers' testimony, and find defendant not guilty of both resisting and insulting or provoking battery on a peace officer. But, based on this record, a rational jury could not find that defendant was guilty of resisting a peace officer but not guilty of insulting or provoking contact with Lafata: the same act of knowingly kicking Officer Lafata was sufficient to prove

the lesser offense of resisting and the greater offense of insulting or provoking battery to a peace officer. Logically, if Hill's kicking Lafata was enough to prove resisting, it was enough to prove insulting or provoking battery of a peace officer, and therefore, a rational jury would not acquit on the aggravated battery charge and convict on the resisting a peace officer charge. Because a rational jury could not find defendant guilty of the lesser resisting offense and not guilty of the greater offense of insulting or provoking battery, the trial judge correctly evaluated the evidence and correctly exercised his discretion in refusing the lesser offense instruction.

¶ 74    The majority blatantly ignores the verdict of the jury and substitutes its view of the evidence to reach its result. The majority is wrong when it states that the State was required to prove that defendant was kicking with the "knowledge that the particular result will follow (here, either insulting or provoking conduct, or resisting)" (*supra* ¶ 21) and finds that defendant could not have had requisite knowledge that his kicking Lafata would constitute insulting or provoking conduct because he was kicking from a "physical position that deprived him of a full range of motion" and "kicked in the direction of officers in the dark with flashlights shining at him, depriving him of the ability to see where his kicks would land." *Supra* ¶ 25. This ignores the fact that the jury found the evidence proved each element of the aggravated battery offense beyond a reasonable doubt. The defendant does not challenge the sufficiency of the evidence to prove this offense. Yet the majority embarks on a journey of speculation to gratuitously shield Hill from the very acts the jury found he committed. The jury heard the evidence, and the majority should respect its verdict. The rationale behind the majority's conclusion that defendant could have kicked "at" Lafata, as the majority frames it (*supra* ¶ 26), repeatedly over a 20-second period but only with the intent to resist arrest and without the knowledge that his repeated kicking would "make contact at all, let alone make contact of an insulting or provoking nature" (*supra* ¶ 25) is not only illogical and nonsensical, especially given that count XXXVIII charged battery on a peace officer based on insulting or provoking conduct, "to wit: kicking about the body," and evidence that defendant's kicks did actually strike Lafata, it is a conclusion made in complete derogation of the jury's verdict.

¶ 75    I am similarly perplexed by the majority's rationale for finding that "a reasonable jury could conclude (if it credited Hill's testimony) that, at most, Hill kicked at Lafata as opposed to successfully making contact." (Emphasis omitted.) S*upra* ¶ 26. Obviously, the jury did not accept Hill's testimony. The majority's statement is dismissive of the role of the jury and is simply a substitution of the majority's fanciful speculation for the unanimous decision of a jury that heard the evidence, judged the credibility of the witnesses, and made factual determinations in deciding whether the prosecution proved its case beyond a reasonable doubt. The jury did not conclude that defendant "kicked at" the officer. If the jury did find defendant "kicked at" the officer, they would have found defendant not guilty of aggravated battery. The jury found that defendant's kicking was insulting or provoking contact with Lafata, and that factual finding should not be ignored or trivialized by the majority.

¶ 76    If the jury believed the three officers, then defendant resisted Lafata and committed insulting or provoking battery on Lafata. If the jury believed defendant, then defendant was not guilty of anything, including resisting Lafata. The jury was presented with an "all or nothing" situation: it could either find that (1) defendant did not knowingly kick Lafata in any way and was innocent of any wrongdoing or (2) defendant knowingly kicked Lafata. The jury could not find, based on the evidence, that defendant committed the offense of resisting Lafata by kicking him without also finding that his kicking Lafata was insulting or provoking contact.

¶ 77    The State clearly proved that defendant knowingly committed insulting or provoking battery to a peace officer by kicking Lafata. See *Nichols*, 2012 IL App (4th) 110519, ¶ 43. At trial, Lafata, Bilyj, and Banaszkiewicz all testified that defendant kicked Lafata about the body while Lafata was attempting to remove defendant from the cubbyhole; defendant was told to "give himself up" but he refused; defendant kicked the officers with his feet, "pushing them away"; and Lafata was struck multiple times in the leg and chest area by defendant's feet.

¶ 78    While this testimony clearly supports a conviction on count XXXVIII for insulting or provoking battery to Lafata, this testimony could arguably also support a conviction for resisting a peace officer as a lesser offense. Lafata testified that he was in pursuit of defendant following a domestic altercation and found defendant hiding under the porch. Lafata identified himself as a police officer and ordered defendant out from the cubbyhole. As Lafata attempted to remove defendant from the cubbyhole and arrest him, Lafata was kicked multiple times by defendant. However, given this evidence, no rational jury could have convicted defendant of the lesser, uncharged offense of resisting and acquit him of the greater, charged offense of insulting or provoking contact with a peace officer.

¶ 79    Defendant testified that he complied with police officers' orders to come out from his hiding place, that he "never resisted arrest," and that Lafata was not even one of the officers at the scene. In addition, when asked by his attorney whether he intentionally kicked any officer, defendant answered, "No, I did not." If the jury believed the three officers, then defendant resisted Lafata and committed aggravated battery on Lafata. If the jury believed defendant, then defendant was not guilty of anything, including resisting Lafata. The jury was presented with an "all or nothing" situation where it could either find that (1) defendant did not resist or kick Lafata in any way and was innocent of any wrongdoing or (2) defendant knowingly kicked Lafata. A rational jury could not find, based on the evidence presented, that defendant committed the offense of resisting by knowingly kicking Lafata without also finding that his kicking Lafata was insulting or provoking.

¶ 80    Based the foregoing, I would find that the trial court correctly reviewed the offense charged and the evidence and it did not abuse its discretion in refusing to instruct the jury on the uncharged offense of resisting a peace officer because the evidence could not support a rational jury finding that defendant was guilty of resisting a peace officer yet not guilty of the charged offense of making insulting or provoking contact with a peace officer.

¶ 81    I respectfully dissent.