# Illinois Official Reports

## Appellate Court

---

### *People v. Wrencher*, 2015 IL App (4th) 130522

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND WRENCHER, Defendant-Appellant. |
| | |
| District & No. | Fourth District<br>Docket No. 4-13-0522 |
| | |
| Filed<br>Rehearing denied | April 30, 2015<br>May 28, 2015 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 07-CF-954; the Hon. Heidi N. Ladd, Judge, presiding. |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Thomas A. Lilien and Rikin Shah, both of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE APPLETON delivered the judgment of the court, with opinion.
                    Justices Turner and Harris concurred in the judgment and opinion.


## OPINION

¶ 1    A jury found defendant, Raymond Wrencher, guilty of two counts of aggravated battery (720 ILCS 5/12-4(b)(18) (West 2006)), for which the trial court sentenced him to a total of 14 years' imprisonment (7 years for each count). On direct appeal, we affirmed the trial court's judgment. *People v. Wrencher*, 2011 IL App (4th) 080619.

¶ 2    Later, in October 2011, defendant filed a petition for postconviction relief, and in April 2012, appointed counsel filed an amended petition. The amended petition claimed that trial counsel, Anthony Ortega, had rendered ineffective assistance by failing to advise defendant he had the option of tendering a jury instruction on a lesser included offense, resisting a peace officer (720 ILCS 5/31-1(a), (a-7) (West 2006)). The postconviction proceeding advanced to the third stage, in which, after hearing evidence, the trial court denied the amended petition. Defendant appeals.

¶ 3    We affirm the trial court's judgment because, in our *de novo* review, we find the trial record devoid of any evidence that could have justified a conviction of resisting a peace officer and a simultaneous acquittal of aggravated battery.


¶ 4                            I. BACKGROUND
¶ 5                            A. The Information
¶ 6    The information, filed on June 5, 2007, had two counts, both charging defendant with aggravated battery (720 ILCS 5/12-4(b)(18) (West 2006)). Count I alleged:

     "[O]n June 5, 2007, *** [defendant] committed the offense of aggravated battery–Class 2 felony, in that the said defendant, in committing a battery, in violation of [section 12-3 of the Criminal Code of 1961 (720 ILCS 5/12-3 (West 2006))], knowingly caused bodily harm to Officer Gregory Manzana, Champaign Police Department, in that the defendant dug his fingernails into Officer Gregory Manzana's hand, knowing Officer Gregory Manzana to be a peace officer, engaged in the execution of his official duties ***."

¶ 7    Count II alleged:

     "[O]n June 5, 2007, *** [defendant] committed the offense of aggravated battery–Class 2 felony, in that the said defendant, in committing a battery, in violation of [section 12-3 of the Criminal Code of 1961 (720 ILCS 5/12-3 (West 2006))], knowingly made physical contact of an insulting or provoking nature with Officer Mark Briggs, Champaign Police Department, in that the defendant sp[a]t blood on Officer Mark Briggs['s] hand, knowing Officer Mark Briggs to be a peace officer, engaged in the execution of his official duties ***."

¶ 8                    B. The Evidence in the Jury Trial (June 2008)

¶ 9        A Champaign police officer, Gregory Manzana, testified that on June 5, 2007, he went to 408 West Maple Street in response to a report of a domestic dispute. He arrived in a marked squad car and in full uniform. He saw a car, in the driveway, with its engine running, and he pulled in behind the car so it could not back out. He shone his spotlight on the car, and the car appeared to be occupied by four to six individuals. These individuals began exiting the car, and Manzana ordered everyone to get back in.

¶ 10       Defendant ignored the order and continued to walk away. Manzana approached him and ordered him to put his hands behind his back. Defendant kept walking, showing no inclination to comply. Manzana grabbed him by the arm, and defendant tried to pull away. Another officer, Ferguson, grabbed defendant's other arm. Defendant struggled with them. Over and over again, Manzana yelled at defendant to get down onto the ground, but defendant spread his legs and braced himself, resisting their efforts to take him down. Finally, Manzana brought defendant to the ground by tripping him. The officers then succeeded in forcing defendant's arms behind his back and putting handcuffs on him.

¶ 11       Several other police officers arrived and kept defendant pinned to the ground while Manzana went to check on the woman who had called in. After speaking with her, Manzana returned to defendant.

¶ 12       Manzana testified:

        "A. He was yelling[,] and he was still on the ground[,] there in the street. At that point[,] *** we decided to go ahead and move him to the squad car. I took his right hand with my left hand and grabbed his right arm with my right hand, like around the bicep, and we picked him up, brought him up to his feet.

        Q. What happened next?

        A. At that point[,] he looked me directly in the eye, kind of–he tensed up, I could see his jaw clench, his shoulders kind of tensed up, next thing I know [,] he started squeezing my hand and gripping into it and digging his nails into my fingers.

        Q. What happened next?

        A. *** I tried to pull my hand away[,] and his grip was too strong. I couldn't pull it away, so I gave him a couple of diversionary strikes to the stomach[,] and he immediately let go, and I was able to pull my hand off.

        Q. Now[,] when the defendant *** had a hold of your hand, did that cause you any pain?

        A. Yes.

        Q. Could you explain?

        A. *** [H]e was squeezing the heck out of my hand there, and it felt *** like his nails were cutting into my skin there, and it just [was] like *** somebody is just trying to crunch your hand there ***."

¶ 13       Manzana testified that after defendant let go of his hand, the tips of his middle ring finger and little finger of his left hand were red and throbbing and he had a cut on the inside of his little finger. People's exhibit No. 4 was a photograph of a small laceration on the tip of Manzana's little finger. He testified that defendant had inflicted this injury.

¶ 14     After Manzana freed himself from defendant's grasp, other police officers escorted defendant to the squad car. Defendant sat down in the squad car but refused to put his legs in. He kicked at officers. Manzana warned him to stop resisting or he would use pepper spray. Defendant replied to go ahead, and he resumed kicking at the officers. Manzana gave him a one-second burst of pepper spray.

¶ 15     Mark Briggs testified that after Manzana applied the pepper spray, defendant stopped kicking at the officers but still refused to put his legs inside the squad car. An officer went around to the driver's side, grabbed defendant by the arms, and pulled him the rest of the way into the squad car so that they could shut the rear passenger door. Defendant immediately started thrashing around and kicking. Concerned that defendant might kick out the windows, Briggs asked the other officers if they had leg restraints. They had none with them. Leg restraints had to be brought to the scene. In the meantime, Briggs talked to defendant and tried to calm him down.

¶ 16     When the leg restraints arrived, defendant stepped out of the squad car as directed. Briggs testified:

> "I turned him around, had him face the trunk. He is standing on the driver's side of the car at this point. Officer Shipley stepped up, applied the leg restraints, double[-]locked them so they wouldn't tighten down on his ankles, and then[,] all of a sudden[,] [defendant] turned and spit a mouth full of blood and pepper spray across the front of my shirt."

¶ 17     Briggs identified People's exhibit No. 1 as a photograph of his uniform shirt. He testified the photograph was taken immediately after defendant spat on him and that it showed blood on the front of the shirt and down the left sleeve.

¶ 18     Defendant took the stand and denied digging his fingernails into Manzana's hand and denied spitting on Briggs. He insisted he had no knowledge of how blood had got on Briggs's shirt.

¶ 19     The jury found defendant guilty of both counts of aggravated battery.

¶ 20                                    II. ANALYSIS
¶ 21                              A. Is the Claim Forfeited?
¶ 22     In his amended petition for postconviction relief, defendant claimed that his trial counsel, Anthony Ortega, rendered ineffective assistance by neglecting to give him some important advice. The omitted advice was that, in the jury instruction conference, defendant could tender an instruction on a lesser included offense, resisting a peace officer (720 ILCS 5/31-1(a), (a-7) (West 2006)). The supreme court has held it should be the defendant's personal decision whether to tender a jury instruction on a lesser included offense. *People v. Brocksmith*, 162 Ill. 2d 224, 229-30 (1994). Obviously, defendant could not have made that personal decision unless he was aware of the option of tendering such an instruction. He accuses Ortega of being ineffective by failing to advise him of that option.

¶ 23     The State's initial response is that because defendant failed to raise this claim on direct appeal, we should regard this claim as forfeited. See *People v. English*, 2013 IL 112890, ¶ 22. On direct appeal, however, the record had nothing to say, one way or the other, as to whether Ortega had explained to defendant his right to tender a jury instruction on the lesser included offense of resisting a peace officer. Unless defendant could have pointed to some evidence in

the record that Ortega had indeed omitted this advice and that defendant consequently was ignorant of his right, it would have been impossible for him to raise the claim on direct appeal. In an appellate brief, when making representations and arguments, a party must cite the pertinent pages of the record. Ill. S. Ct. R. 341(h)(6), (h)(7) (eff. Feb. 6, 2013). "[G]enerally, a party may not rely on matters outside the appellate record to support his or her position on appeal." *Kildeer-Countryside School District No. 96 v. Board of Trustees of the Teachers' Retirement System*, 2012 IL App (4th) 110843, ¶ 21. (Matters of which a court may take judicial notice are an exception. *Brotherhood of Locomotive Firemen & Enginemen v. New York Central R.R. Co.*, 339 Ill. 201, 206 (1930).) Because an appellant generally is limited to the record, omitting a claim in the direct appeal will not result in a forfeiture of the claim in a subsequent postconviction proceeding if the record on direct appeal did not provide the means of raising the claim. *English*, 2013 IL 112890, ¶ 22. Thus, we disagree with the State's contention of forfeiture.

¶ 24                    B. Is Resisting a Peace Officer a Lesser Included Offense?

¶ 25    Omitting to tell defendant about the option of tendering a jury instruction on resisting a peace officer was ineffective assistance only if tendering such an instruction would have been legally meritorious. In other words, Ortega can be faulted for omitting such advice only if he could have argued to the trial court, correctly, that resisting a peace officer was included in aggravated battery (720 ILCS 5/12-4(b)(18) (West 2006)). See *People v. Segoviano*, 189 Ill. 2d 228, 246-47 (2000).

¶ 26    As we will discuss more fully in a moment, that is not the only proposition Ortega would have had to argue to the trial court. He also would have had to argue, correctly, that at least some slight evidence had been adduced to support a jury instruction on resisting a peace officer as an alternative to aggravated battery. See *People v. Baldwin*, 199 Ill. 2d 1, 14 (2002); *People v. Jones*, 175 Ill. 2d 126, 132 (1997). But let us first consider the question of whether resisting a peace officer is included in aggravated battery.

¶ 27    Section 31-1(a) of the Criminal Code of 1961 defines the offense of resisting a peace officer as follows: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2006). Thus, the Class A misdemeanor of resisting a peace officer has two elements. First, the defendant knowingly resisted or obstructed the peace officer's performance of any authorized act within his or her official capacity. Second, the defendant knew the peace officer was a peace officer.

¶ 28    Now we will compare those statutory elements to the greater offense, aggravated battery (720 ILCS 5/12-4(b)(18) (West 2006)), *as it is described in the charging instrument*. See *Baldwin*, 199 Ill. 2d at 8. That is, we will use "the charging instrument approach." *People v. Novak*, 163 Ill. 2d 93, 112 (1994). (By contrast, if the question were whether the one-act, one-crime rule allowed convictions of multiple offenses, all of them charged, we would use the "abstract-elements approach," which would be strictly a comparison of statutory elements. *People v. Stull*, 2014 IL App (4th) 120704, ¶ 63.) Under the charging instrument approach, the charging instrument need not expressly allege all the elements of the lesser offense; it is enough if the elements could be reasonably inferred from the language of the charging instrument. *Baldwin*, 199 Ill. 2d at 8.

¶ 29    Again, count I of the information reads as follows:

"[O]n June 5, 2007, *** [defendant] committed the offense of aggravated battery–Class 2 felony, in that the said defendant, in committing a battery, in violation of [section 12-3 of the Criminal Code of 1961 (720 ILCS 5/12-3 (West 2006))], knowingly caused bodily harm to Officer Gregory Manzana, Champaign Police Department, in that the defendant dug his fingernails into Officer Gregory Manzana's hand, knowing Officer Gregory Manzana to be a peace officer, engaged in the execution of his official duties ***."

¶ 30    Count I expressly alleges that defendant knew Manzana to be a peace officer. See 720 ILCS 5/31-1(a) (West 2006). Count I does not expressly allege, however, that defendant knowingly resisted or obstructed Manzana in his performance of an authorized act in his official capacity. See *id.* Nevertheless, count I alleges that defendant committed a battery, defined as knowingly causing bodily harm or knowingly making physical contact of an insulting or provoking nature (720 ILCS 5/12-3 (West 2006)). In context, the knowing causation of bodily harm could be only the gouging with fingernails. Count I alleges that when defendant gouged Manzana with his fingernails, defendant knew Manzana was engaged in the execution of his official duties. When executing his official duties, Manzana necessarily was performing an authorized act in his official capacity. See 720 ILCS 5/31-1(a) (West 2006). Executing a duty entails doing some kind of act. Being gouged by fingernails increases the difficulty of whatever act one happens to be doing at the time. Therefore, a reasonable inference, from count I, is that defendant knowingly resisted or obstructed Manzana in his performance of an authorized act in his official capacity by digging his fingernails into Manzana's hand, knowing him to be a peace officer engaged in the execution of his official duties. See *Baldwin*, 199 Ill. 2d at 8. We conclude, then, in our *de novo* review of this issue (see *People v. Kolton*, 219 Ill. 2d 353, 361 (2006)), that the lesser offense of resisting a peace officer (720 ILCS 5/31-1(a) (West 2006)) is indeed included in count I, which alleges the greater offense of aggravated battery (720 ILCS 5/12-4(b)(18) (West 2006)).

¶ 31    Now let us turn to count II. Again, it reads as follows:

"[O]n June 5, 2007, *** [defendant] committed the offense of aggravated battery–Class 2 felony, in that the said defendant, in committing a battery, in violation of [section 12-3 of the Criminal Code of 1961 (720 ILCS 5/12-3 (West 2006))], knowingly made physical contact of an insulting or provoking nature with Officer Mark Briggs, Champaign Police Department, in that the defendant sp[a]t blood on Officer Mark Briggs['s] hand, knowing Officer Mark Briggs to be a peace officer, engaged in the execution of his official duties ***."

¶ 32    Spitting on someone is an act of contempt or provocation, not, typically, an act of resistance or obstruction. We cannot reasonably infer that when defendant spat on Briggs's shirt, he *knew* he thereby would obstruct Briggs from doing anything. All we can reasonably infer is that he knew Briggs would be disgusted and provoked. Therefore, because an essential element of resisting a peace officer–knowing resistance or obstruction–cannot reasonably be inferred from the language of count II, resisting a peace officer is not included in count II, although it is included in count I. See *Baldwin*, 199 Ill. 2d at 8.

¶ 33                              C. Was There Some Slight Evidence To Support
                                    an Instruction on Resisting a Peace Officer?

¶ 34            The analysis does not stop with the conclusion that resisting a peace officer is included in count I. The claim of ineffective assistance also depends on another, separate question: In the jury trial, was any evidence adduced, even "[v]ery slight evidence" (*Jones*, 175 Ill. 2d at 132), that would have supported a conviction of resisting a peace officer *in lieu of* a conviction of aggravated battery as alleged in count I (see *People v. Landwer*, 166 Ill. 2d 475, 486 (1995))? "[A] court must examine the evidence presented at trial to determine whether a jury could rationally find the defendant guilty of the lesser offense, but acquit on the greater offense." *Id.* (There is, perhaps, a contradiction between the generous criterion of "[v]ery slight evidence" (*Jones*, 175 Ill. 2d at 132) and the more demanding criterion of rationality (*Landwer*, 166 Ill. 2d at 486), but this appeal does not require us to address that contradiction.)

¶ 35            This is not to say we should indiscriminately troll through the record for any evidence at all of resisting a peace officer. Due process limits us to the conduct that count I alleges. See *Baldwin*, 199 Ill. 2d at 12. So, a more precise way of framing the question is as follows: Would it have been rationally defensible to find that by knowingly digging his fingernails into Manzana's hand, defendant committed the offense of resisting a peace officer but *not* the offense of aggravated battery? (Because the act of obstructing Manzana had to be knowing for purposes of resisting a peace officer (720 ILCS 5/31-1(a) (West 2006)), the act that did the obstructing, digging his fingernails into Manzana's hand, had to be knowing.) The answer is no because by knowingly digging his fingernails into Manzana's hand, defendant necessarily committed aggravated battery. *Digging* his fingernails into Manzana's hand, for purposes of resisting a peace officer, necessarily caused "bodily harm," for purposes of aggravated battery, because to "dig," by definition, is to "drive down so as to penetrate"–in this instance, the skin (Merriam-Webster's Collegiate Dictionary 323 (10th ed. 2000)). Thus, it would have been rationally impossible to acquit defendant of aggravated battery as alleged in count I while convicting him of resisting a peace officer. It follows that although resisting a peace officer was indeed included in count I, as defendant argues, Ortega nevertheless was justified in refraining from presenting to defendant the option of tendering a jury instruction on resisting a peace officer, because not even the slightest evidence would have supported a conviction of resisting a peace officer and a simultaneous acquittal of aggravated battery as alleged in count I. Although there was evidence that defendant resisted Manzana by digging his fingernails into Manzana's hand, that very act sealed his conviction of aggravated battery.

¶ 36            In sum, defendant's theory that he was entitled to a jury instruction on the lesser included offense of resisting a peace officer (and hence his theory of ineffective assistance of trial counsel) stumbles on the second step, the step of "examin[ing] the evidence presented at trial to determine whether a jury could rationally find the defendant guilty of the lesser offense, but acquit on the greater offense." *Landwer*, 166 Ill. 2d at 486.

¶ 37            A case on which defendant relies, *People v. Pedersen*, 195 Ill. App. 3d 121 (1990), skipped that crucial second step and consequently fell into error. In *Pedersen*, the information charged the defendant with aggravated battery (Ill. Rev. Stat. 1987, ch. 38, ¶ 12-4(b)(6)) " 'in that he kneed Bruce Dayno in the groin and bit Bruce Dayno on the finger[,] knowing Bruce Dayno to be a peace officer engaged in the execution of his official duties.' " *Pedersen*, 195 Ill. App. 3d at 129. The bite inflicted a cut on Dayno's finger, for which he received treatment at the hospital. *Id.* at 124. The Second District reasoned that although the information did not

expressly state that the defendant had committed an act that resisted or obstructed Dayno in the performance of his duties, a reasonable inference was that the kneeing and the biting had resisted or obstructed Dayno. *Id.* at 129-30. Therefore, the Second District concluded that resisting a peace officer was included in aggravated battery as described in the information. *Id.* at 130.

¶ 38   So far, so good, but then the Second District proceeded immediately to the further conclusion that the defendant was entitled to an instruction on resisting a peace officer:

> "Therefore, we agree with the defendant that *** resisting arrest is a lesser included offense of aggravated battery. The defendant was entitled to an instruction on the lesser included offense of resisting a police officer, and, therefore, the judgment must be reversed and the cause remanded for a new trial." *Id.*

¶ 39   The problem with that passage is it forgets to consider whether a conviction of resisting a peace officer *and a simultaneous acquittal of aggravated battery* would have been rationally possible, given the evidence. See *People v. Bryant*, 113 Ill. 2d 497, 507 (1986). If the defendant resisted Dayno by inflicting a bite injury on his finger, it is hard to see how he could have been acquitted of aggravated battery. As in the present case, the very act that would constitute resisting a peace officer would merit a conviction of the greater offense. There would have been no point in giving the jury an instruction on the lesser included offense of resisting a peace officer unless, on the basis of the evidence, the jury could have rationally convicted the defendant of that offense *in lieu of* aggravated battery.

¶ 40                                    III. CONCLUSION
¶ 41   For the foregoing reasons, we affirm the trial court's judgment, and we award the State $50 in costs against defendant.

¶ 42   Affirmed.