NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240838-U

NO. 4-24-0838

IN THE APPELLATE COURT

FILED
December 30, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| FELIPE SOLIS, | ) | No. 23CF501 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Harris and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:   There was no error in the admission of evidence, and defendant was not entitled to a lesser-included offense instruction.

¶ 2    Following a jury trial, defendant Felipe Solis was convicted of one count of aggravated battery (720 ILCS 5/12-3.05(d)(4) (West 2022)) and two counts of disorderly conduct (*id.* § 26-1(a)(1)). On appeal, he argues that the trial court erred in (1) admitting other-crimes evidence, (2) admitting an unredacted police body-worn camera (BWC) video exhibit he contended was highly prejudicial and unnecessary to prove the charged offenses, and (3) denying the request for a jury instruction on an alleged lesser-included offense. For the reasons that follow, we affirm.

¶ 3                              I. BACKGROUND

¶ 4                              A. Pretrial

¶ 5 Prior to defendant's jury trial, the State moved to admit other-crimes evidence pursuant to Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011) regarding an offense at issue in a different case pending in McLean County. In that case, defendant was alleged to have broken a window at Gerald Safford's home the night before the offenses in this case. The State argued that the other-crimes evidence was to prove identity, motive, and intent in relation to the disorderly conduct counts. The State believed Safford would testify that he did not know defendant prior to the offenses at issue but defendant "was the same person who broke his window on May 20th, who showed up on May 21st, *** and brandished a knife." The State also argued that defendant's prior visit to Safford went directly to defendant's motive and intent in brandishing the knife on May 21, 2023, which was to threaten Safford. The State also argued there was similarity between the prior incident and the alleged offenses in this case because in both incidents, defendant acted disorderly.

¶ 6 Defendant objected, arguing that McLean County case No. 23-CM-351 was still pending. Moreover, it was irrelevant because those events occurred prior to the instant offenses, they resulted in a separate charge, and there were less prejudicial methods of proving identity, motive, and intent.

¶ 7 In granting the State's motion, the trial court explained that the evidence was proper for the purposes of identity, motive, and intent, as well as showing a continued narrative. Further, the evidence's probative value outweighed its prejudicial effect. The court stated:

> "[D]efendant showed up at [Safford's home] and ended up allegedly breaking a window in a door *** and inquiring whether or not his wife was at the house.
>
> The very next day *** this incident is alleged to have occurred and with the same alleged individual, this time possessing some type of knife, committing the offense of disorderly conduct as alleged in this case. Certainly identity is an issue.

Motive and intent are also issues that can be addressed, and the Court believes that the evidence from the night before is certainly *** evidence that would make the events of the following day more or less likely, and would establish motive, intent, and identity, continuing the narrative.

*** [T]his evidence, while it is prejudicial, is also highly probative, and that the probative value is not outweighed by the prejudicial effect ***."

¶ 8　　　Defendant also moved to redact portions of the BWC video exhibit, later submitted as People's exhibit No. 5, arguing that the majority of the recording was irrelevant and prejudicial. The State argued that the BWC video included relevant and highly probative evidence that demonstrated defendant's conduct prior to spitting in the officer's face. The State contended that the video showed defendant's demeanor, intent, mood, and lack of mistake with respect to both the assault and disorderly conduct charges. As the entire seven-minute video exhibit was played for the trial court, defense counsel noted the various portions that he felt could be admitted, but he argued the remaining portions were irrelevant.

¶ 9　　　After review, the trial court denied defendant's motion to further redact the BWC video exhibit, explaining:

"[Defendant's] conduct is basically setting forth the tone of his mood at that time. It is prejudicial. It is definitely prejudicial, but it's definitely highly probative as to the act that he ultimately is alleged to have committed. And I don't see how, after you weigh the probative value and the prejudicial effect, you can say that the prejudicial effect outweighs the probative value. *** [I]t definitely sets the tone for the ultimate act, and demonstrates by way of video what occurred on the date of the incident."

¶ 10　　　　　　　　　　　　　B. Jury Trial

¶ 11    At defendant's jury trial, the State called Sheila Brown, Gerald Safford, and Bloomington Police Officers Justin Callahan, Ronald Fryman, and Jose Zavala to testify. The State also tendered, and the court received, evidence that included, among other things, photographs of the knife defendant allegedly brandished and BWC video from each of the officers.

¶ 12    Sheila Brown testified that she lived directly across the street from Safford. At approximately 4 p.m. on May 21, 2023, she observed defendant walking between her home and Safford's while holding a knife and shouting. He stood in the middle of the street and yelled with the knife in his hand. Brown stood in her driveway directly next to the street and watched while defendant "was cussing, *** [and] calling people" racial epithets while holding the knife. At one point, defendant was specifically yelling at Brown. She felt nervous and scared when defendant was shouting and waving his knife in the street. Brown identified defendant in open court as the man she saw holding the knife and shouting in the street.

¶ 13    Safford testified that, on May 21, 2023, a man walked up to him, yelling while holding a knife; he identified defendant in open court as that man. Before Safford's testimony turned to the events of May 20, 2023, the trial court admonished the jury regarding the prior-crimes evidence, stating:

> "[E]vidence will be received that the defendant has been involved in an offense other than those charged in the indictment and information. This evidence will be received on the issues of defendant's identification, intent, motive, and continuing narrative, and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that offense, and if so, what weight should be given to this evidence on issues of identification, intent, motive, and continuing narrative."

¶ 14        Safford then stated he had encountered defendant, who he had met on previous occasions, the previous night, May 20, 2023. On the evening of May 20, defendant's girlfriend knocked on Safford's door, "asking for something." Safford told her "no" and closed the door, and then she left. Minutes later, defendant knocked on the door, looking for his girlfriend. Safford told defendant that his girlfriend was not there and slammed the door. "Two seconds after that," a chair came through his front window. Safford called the police to report the incident.

¶ 15        The next day, defendant once again appeared at Safford's home. Defendant asked Safford, "Why'd you call the fucking police on me. I'm going to get your ass. I know where you live. I'm going to get your ass. I know where you live, I know your family, I'm going to kill your family, I'm going to kill you." Safford saw defendant pull a knife out of his pocket while he was threatening him. Safford stated there were two other people present and defendant also threatened them. Defendant remained near Safford's residence for approximately 5 to 10 minutes but left prior to police arriving. Safford was subsequently brought to another location, where he identified defendant as the man he saw threatening him and brandishing a knife.

¶ 16        Officer Justin Callahan responded to a dispatch call to Safford's residence just after 4 p.m. on May 21, 2023, where he spoke with both Safford and Brown. He and other officers located a suspect about two blocks from Safford's residence. Callahan drove Safford to the area where the suspect had been detained, and Safford identified the suspect as the same person who was involved in the incident at his home. That person was defendant. The identification was recorded on Callahan's squad car video footage, a copy of which was admitted as People's exhibit No. 3 and played for the jury.

¶ 17        Officer Jose Zavala testified that he was on duty, in his uniform and driving a marked squad car, around 4:07 p.m. on May 21, 2023. He was dispatched to Safford's residence

and was provided with a description of the suspect last seen a block from Safford's residence. He located a person matching that description about a block and a half away from Safford's home, and he identified defendant in open court as the man he located. He attempted to talk to defendant, but defendant was aggressive and argumentative. Defendant did not comply when ordered to stop until Zavala drew his taser. When asked about the knife, defendant stated he did not have it, but he later pulled it from his pocket and threw it onto the roof of a nearby building. Defendant was placed in handcuffs and began swearing at the officers. Zavala placed defendant in the back of the squad car.

¶ 18        Zavala had defendant step out of the squad car as Safford was brought to the scene to identify him. Afterwards, defendant stated that he was not going back into the squad car and resisted being forced to do so. After Zavala pushed defendant into the car, he turned around and spat in Zavala's face. Zavala was wearing his BWC, which captured the interactions. Defendant renewed his objection regarding the BWC video exhibit, which the trial court overruled. The BWC footage was admitted as People's exhibit No. 5 and played for the jury.

¶ 19        The video depicted defendant being approached by two officers as he was walking away from them. Defendant refused to stop and immediately began using profane and degrading language toward the officers. When Zavala asked defendant where the knife was, he replied, "I got [the knife] in your ass, bitch. I ain't gotta fucking do shit. Get the fuck outta here." As he continued to walk away from the officers, he threw the knife on top of a nearby roof. After that, defendant was placed in handcuffs and continued using profane and offensive language toward all of the officers involved. The majority of defendant's statements during the video were made specifically to Zavala, which included:

"Fuck you, I ain't gotta do shit. Fuck you"; "You's a bitch Zavala. You ain't Mexican, bitch"; "Zavala you a fuckin bitch. You ain't Mexican, bitch"; "Your mother still sucks my dick, I don't give a fuck"; "Hey, stupid ass bitch, I know my rights"; "Oh strong man. Swindle these nuts in your fucking mouth, you fucking bitch"; "You's a dumb bitch. I don't give a fuck, fuck you. *** Your mother still sucks my dick, remember that Zavala. You're probably my fucking son, bitch. *** Congratulations, dumb ass bitch. She's a hoe anyway."

¶ 20 Defendant was removed from the squad car for Safford to complete an identification. After that, officers attempted to place defendant back in the squad car. Defendant refused to comply and was pushed into the squad car. Defendant can be seen lying on the back seat of the squad car when he turned to face Zavala and sat up. After sitting up, he yelled, "Zavala you's a bitch. Your mother's a fuckin—you ain't even Mexican." Defendant then can be seen inhaling and then quickly and forcibly exhaling. Although defendant's mouth went briefly out of the video frame at this point, this movement was accompanied by a sound consistent with spitting. Zavala pushed defendant's face away from him and stated, "Do not be spitting on me." Lying in the back seat of the squad car, defendant was laughing and stated, "You's a bitch, bitch," and, "You's a bitch, Zavala. Your mother's a fucking bitch." When Zavala went to place an item in the squad car, defendant continued, "Zavala you's a bitch, your mother's a bitch. Your whole religion's a bitch."

¶ 21 Once they arrived at the police department, defendant continued his remarks by stating, "Scary-ass, Zavala, bitch." Defendant also stated, "I should have spit in your face, you pussy-ass bitch." Officer Zavala responded by saying, "You did," to which defendant replied, "I

don't give a fuck if you put it in the report, bitch. That shit ain't gunna stick. Fucking pussy-ass, mother fucker."

¶ 22        Officer Ronald Fryman testified that he obtained the knife defendant threw on top of the nearby roof. Fryman's BWC video captured his retrieval of the knife after climbing a ladder. The video was admitted into evidence and played for the jury.

¶ 23        At the jury instruction conference, defense counsel requested an instruction on the "lesser" offense of resisting or obstructing a peace officer, which the trial court denied after determining resisting or obstructing is not a lesser-included offense of aggravated assault. The jury was instructed that the evidence of other crimes was introduced for the limited purpose of "defendant's identification, intent, motive, and continuing narrative."

¶ 24                        C. Verdict, Posttrial Motion, and Sentence

¶ 25        The jury found defendant guilty of all charges. Pertinent on appeal, defendant's posttrial motion argued that the admission of the unredacted BWC footage and other-crimes evidence was improper and that the jury should have been instructed on a lesser-included offense of resisting or obstructing a peace officer. The trial court denied the motion, stating the prior bad acts evidence was not allowed in as evidence of propensity, but for intent, state of mind, and other reasons previously noted at the time of the initial ruling. The court also reiterated that defendant's act of spitting was a matter of contempt toward the officer, not obstruction.

¶ 26        Defendant was sentenced to 4 years' and 10 days' imprisonment.

¶ 27        This appeal followed.

¶ 28                                II. ANALYSIS

¶ 29        Defendant argues that the trial court erred in admitting other-crimes evidence suggesting that defendant had thrown a chair through one of the witnesses' front window the night

before the underlying incident at issue and by allowing the unredacted footage of defendant's interaction with Zavala into evidence. He also argues the court erred in refusing a jury instruction on the offense of obstruction of an officer as a lesser-included offense of aggravated battery of an officer. The State argues that all evidence was properly admitted or, alternatively, that any error was harmless. Further, the State contended that defendant was not entitled to a lesser-included offense instruction.

¶ 30                                      A. Other-Crimes Evidence

¶ 31        "The term 'other-crimes evidence' encompasses misconduct or criminal acts that occurred either before or after the allegedly criminal conduct for which the defendant is standing trial." *People v. Spyres*, 359 Ill. App. 3d 1108, 1112 (2005). "The trial court may admit evidence of other crimes, wrongs, or acts of misconduct to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident [citation], but the evidence must be relevant without relying on a propensity inference." (Internal quotation marks omitted.) *People v. Smart*, 2025 IL 130127, ¶ 72; see Ill. R. Evid. 404(b) (eff. Jan. 1, 2011) (same). Other-crimes evidence can also be admitted as "a continuing narrative of the circumstances attending the entire transaction" (*People v. Carter*, 362 Ill. App. 3d 1180, 1189 (2005)) or "to demonstrate the defendant's consciousness of guilt" (*People v. Abernathy*, 402 Ill. App. 3d 736, 753 (2010)).

¶ 32        Regarding the admission of evidence to show a continuing narrative, this evidence can be offered to explain an aspect of the crime charged or some of the conduct engaged in by the accused that would otherwise be implausible or perhaps even inexplicable. *Carter*, 362 Ill. App. 3d at 1190.

¶ 33        In *Carter*, this court examined caselaw surrounding the continuing narrative exception and noted that:

"[E]vidence of another crime is admissible if it is part of a continuing narrative of the event giving rise to the offense or, in other words, intertwined with the offense charged. [Citations.] As this court has explained, [w]hen facts concerning uncharged criminal conduct are all part of a continuing narrative which concerns the circumstances attending the entire transaction, they do not concern separate, distinct, and unconnected crimes." (Internal quotation marks omitted.) *Id.* at 1189-90 (quoting *People v. Thompson*, 359 Ill. App. 3d 947, 951 (2005)).

Furthermore, the evidence is admissible " 'to explain an aspect of the crime charged which would otherwise be implausible.' " *Id.* at 1190 (quoting *People v. LeCour*, 273 Ill. App. 3d 1003, 1008 (1995)).

¶ 34       Nonetheless, even where relevant and admissible pursuant to an exception, "evidence should not be admitted if its probative value is substantially outweighed by its prejudicial effect." *People v. Pikes*, 2013 IL 115171, ¶ 11. We review the trial court's admission of other-crimes evidence for an abuse of discretion. *Id.* ¶ 12.

¶ 35       Defendant argues that the evidence of the events of the evening prior to the incident underlying the instant appeal was unnecessary to show identity, intent, or motive, but he ignores the fact that the trial court explicitly stated that the evidence was admissible as a continuing narrative. Specifically, he argues that the testimony from Safford regarding the altercation the night before and the fact that a chair was thrown through Safford's window immediately afterwards should not have been admitted. We disagree, as this testimony describes events which set the stage for the altercation the next day. After the altercation on May 20, Safford called the police and noted that the chair had come flying through his window shortly after he slammed his door in defendant's

face. This explained to the jury why defendant appeared at Safford's house the next day asking why Safford had reported him to police.

¶ 36    While defendant individually addresses most of the other-crimes exceptions to the general prohibition in his briefing, he argues that the State failed to sufficiently establish that he committed or participated in throwing the chair through Safford's window. However, the State did not need to prove beyond a reasonable doubt that defendant threw the chair through the window, only that the probability that he did so was beyond a mere suspicion. *People v. Thingvold*, 145 Ill. 2d 441, 456 (1991).

¶ 37    Here, the State sufficiently tied defendant to the pending offense with testimony establishing that defendant was at Safford's home that evening; defendant had a verbal altercation with Safford; and moments after Safford ended the conversation with defendant by closing the front door, a chair broke through the front window. This testimony raises the probability defendant committed the alleged offense beyond mere suspicion.

¶ 38    Turning to the substance of defendant's argument, he challenges identification, intent, and motive as viable exceptions to allow the other-crimes evidence to reach the jury; he fails to challenge the continuing narrative exception on which the jury was also instructed. See *Spyres*, 359 Ill. App. 3d at 1113-14 ("Other-crimes evidence that is admissible for one reason is not affected by inadmissibility for another reason.").

¶ 39    Defendant also argues that regardless of the evidence's admissibility under the previously mentioned exceptions, it still should have been excluded where its probative value was substantially outweighed by its prejudicial effect.

¶ 40    As previously found, the other-crimes evidence was probative of the narrative underlying the offense, giving the incident context. The testimony that Safford called the police

about defendant after a chair was thrown through his window immediately following an argument with defendant laid the foundation for the confrontation the next day and also established defendant's hostility toward Safford. See *People v. Nixon*, 2016 IL App (2d) 130514, ¶ 43 ("[P]rior attacks upon the same victim are probative of intent, motive, and relationship."). The incidents involving Safford and defendant were temporally close, occurring only hours apart. Each incident involved violence or threatened violence by defendant against Safford following an argument and defendant fleeing prior to police arriving.

¶ 41    Furthermore, the trial court reduced any prejudicial impact of this evidence by instructing the jury that it could be considered only for the "limited purpose" of "defendant's identification, intent, motive, and continuing narrative," and not for any other purpose. The trial court gave the jury this instruction immediately before Safford's testimony and once at the end of trial. See *People v. Glasper*, 234 Ill. 2d 173, 201 (2009) (noting jurors are presumed to follow the court's instructions).

¶ 42    Even if the evidence complained of were erroneously admitted—which it was not— such evidence would require reversal only if it was a material factor in the conviction and likely affected the verdict. See *People v. Patterson*, 2013 IL App (4th) 120287, ¶ 59 ("To necessitate reversal, the other-crimes evidence 'must have been a material factor in the defendant's conviction such that, without the evidence, the verdict likely would have been different.' " (quoting *People v. Hall*, 194 Ill. 2d 305, 339 (2000))). Taking the evidence in this matter as a whole, the other-crimes evidence was not a material factor in defendant's conviction in light of the overwhelming evidence presented against him.

¶ 43    Under these circumstances, the trial court did not abuse its discretion in admitting the evidence of the prior altercation as a continuing narrative.

¶ 44                                    B. Relevance of Unredacted BWC Video

¶ 45              Next, defendant argues that the trial court erred in admitting the unredacted BWC

footage from Zavala that contained "irrelevant and prejudicial" statements that undermined his

right to a fair trial because the entirety of the footage was not relevant to the charged offenses.

Specifically, he argues that comments such as, "Your mother still sucks my dick," and, "All you

Bloomington pussies, BPD are some bitches" were irrelevant to the charges at issue and that

comments to Zavala that he was a "pussy ass bitch" and degrading sexual comments about

Zavala's mother were highly inflammatory and served no legitimate purpose.

¶ 46              Pursuant to Illinois Rule of Evidence 402 (eff. Jan. 1, 2011), all evidence that is

relevant is admissible except as otherwise prohibited. Even if evidence is relevant and not

otherwise prohibited, it should be excluded if the danger of unfair prejudice substantially

outweighs the probative value. Ill. R. Evid. 403 (eff. Jan. 1, 2011). As with other evidentiary issues,

we review the trial court's admission of evidence for an abuse of discretion. *People v. Bush*, 2023

IL 128747, ¶ 57.

¶ 47              Defendant relies on *People v. Gregory*, 2016 IL App (2d) 140294, ¶ 1, where the

defendant was convicted of threatening a public official and cyberstalking. The defendant argued

that the admission into evidence of letters that he wrote *after* the alleged offenses that contained

profane, derogatory, and homophobic content, as well as references to other "crimes, bad acts, and

facts that could place [the] defendant in a bad light," constituted error. *Id.* ¶ 9. The appellate court

in *Gregory* noted that "[t]he problem" with the State's use of the letters was that they were

minimally relevant and contained "large amounts of other-crimes evidence that the State does not

even argue was relevant." *Id.* ¶¶ 25-26. Further complicating the use of the evidence was the lack

of a limiting instruction from the trial court to the jury. *Id.* ¶ 30.

¶ 48       Here, we find *Gregory* distinguishable. Rather than relying on letters written after the fact, the evidence in this case is video of defendant in the minutes leading up to him spitting on Zavala. Furthermore, this is not a case where the challenged evidence is minimally relevant because, as the trial court stated, the video was highly probative of defendant's mood and intent just prior to the aggravated battery and set the "tone" for what occurred. We do not agree with defendant that the video was irrelevant to the charged offenses. The comments to Zavala and the other officers served the same purpose as spitting on Zavala: provocation, although to a lesser degree.

¶ 49       We also agree with the trial court that the probative value of the video outweighed any potential for substantial prejudice. As discussed above, we agree with the State that the evidence in this case was overwhelming. The portion of the BWC footage showing defendant spit on Zavala was not contested below or on appeal. Zavala testified that defendant spat on him. Both Safford and Brown testified to a similar course of events, where defendant stood in the street yelling obscenities and brandishing a knife. When approached by officers, defendant threw the knife onto a roof. On the whole, even if the admission of the unredacted BWC footage in this case was error, it was harmless. See *People v. Thurow*, 203 Ill. 2d 352, 363 (2003) ("[T]he State must prove beyond a reasonable doubt that the jury verdict would have been the same absent the error.").

¶ 50                                C. Lesser-Included Offense

¶ 51       Finally, defendant argues that the trial court erred in denying the request for a jury instruction on the offense of resisting or obstructing a peace officer as a lesser-included offense of aggravated battery.

¶ 52       When determining whether a defendant may receive a lesser-included offense instruction, the Illinois Supreme Court has made clear that the charging instrument approach is the

proper method to decide whether an uncharged offense is a lesser-included offense of a charged offense. *People v. Kennebrew*, 2013 IL 113998, ¶ 41. Under this approach, "[a] lesser offense will be 'included' in the charged offense if the factual description of the charged offense describes, in a broad way, the conduct necessary for the commission of the lesser offense and any elements not explicitly set forth in the indictment can reasonably be inferred." *People v. Kolton*, 219 Ill. 2d 353, 367 (2006). However, "[a] defendant is entitled to a lesser-included offense instruction only if the evidence at trial is such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *People v. Medina*, 221 Ill. 2d 394, 405 (2006).

¶ 53        Defendant was charged with aggravated battery based on Zavala's status as a peace officer. "A person commits aggravated battery when, in committing a battery, other than by the discharge of a firearm, he or she knows the individual battered to be" among other things, "[a] peace officer" in the act of "performing his or her official duties." 720 ILCS 5/12-3.05(d)(4)(i) (West 2022). The battery alleged in the information was that defendant made physical contact of an insulting or provoking nature when he spat in Zavala's face.

¶ 54        In order to prove resisting or obstructing a peace officer, the State would have needed to show that defendant (1) knowingly resisted arrest or obstructed (2) an individual known to be a peace officer (3) in the performance of an authorized act within his or her official capacity. *Id.* § 31-1.

¶ 55        We note that the analytical framework employed for determining whether a defendant is entitled to a lesser-included instruction is similar to other two-pronged analyses often employed by this court. See *People v. White*, 2011 IL 109689, ¶¶ 133, 144 (noting the analytical similarity between first-prong plain error review and ineffective assistance of counsel and finding that where a defendant was unable to establish prejudice, there was no need to determine whether

error occurred.) Similar to those approaches, if defendant cannot establish that a jury could rationally find him guilty of the lesser offense, yet acquit him of the greater, there is no need to determine whether the lesser offense is encompassed by the greater under the charging instrument approach.

¶ 56 Here, the question is, could a jury have rationally found that defendant's act of knowingly spitting in Zavala's face constituted the offense of resisting a peace officer but not aggravated battery? See *People v. Wrencher*, 2015 IL App (4th) 130522, ¶ 35. Similar to *Wrencher*, the answer here is no. The evidence showed that defendant was clearly aware of Zavala's status as a police officer. Further, there are numerous cases finding that knowingly or intentionally spitting on a police officer constitutes physical contact of an insulting or provoking nature. See *e.g.*, *People v. Taylor*, 2022 IL App (4th) 210507, ¶ 18 ("[S]pitting has been recognized as an act sufficient to support a battery conviction since the development of the early common law."); *People v. Peck*, 260 Ill. App. 3d 812, 814-15 (1994) ("[The] defendant's spitting in the face of a police officer in this case clearly amounts to insulting or provoking contact."). "Spitting on someone is an act of contempt or provocation, not, typically, an act of resistance or obstruction." *Wrencher*, 2015 IL App (4th) 130522, ¶ 32.

¶ 57 We find that the trial court did not err in refusing to tender the requested lesser-included offense instruction where it would not have been rational to find defendant guilty of the lesser offense because he committed aggravated battery.

¶ 58                                                III. CONCLUSION

¶ 59 For the reasons stated, we affirm the trial court's judgment.

¶ 60 Affirmed.